UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ENRIQUE PEREZ, GEOVANY ANTONIO
ALBARADO, JAVIER CRUZ PEREZ, and
PETER REYES on their own behalf and on the
behalf of others similarly situated,

       Plaintiffs,       **MEMORANDUM AND ORDER**
                   10 CV 4453 (DRH) (ARL)

      - against -

G&P AUTO WASH INC. and
GREG STAR, an individual,

        Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**HELEN F. DALTON & ASSOCIATES PC**
Attorneys for Plaintiffs
69-12 Austin Street
Forest Hills, New York 11375
By: Helen F. Dalton, Esq.
   Roman M. Avshalumov, Esq.

**DEVITT SPELLMAN BARRETT, LLP**
Attorneys for Defendants
50 Route 111
Smithtown, New York 11788
By: Jeltje deJong, Esq.
   Joshua S. Shteierman, Esq.

**HURLEY, Senior District Judge:**

   Plaintiffs commenced this action against defendants G&P Auto Wash Inc. ("G&P") and

Greg Star ("Star") (collectively, "defendants") in September 2010.  Three plaintiffs, Enrique

Perez ("Enrique"), Geovany Antonio Albarado ("Albarado"), and Javier Cruz Perez ("Javier"),

allege that defendants violated the minimum wage and overtime payment requirements set forth

in the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law

("NYLL").  The fourth plaintiff, Peter Reyes ("Reyes"), alleges that defendants terminated his employment in retaliation for his refusal to clean rat droppings on the work premises.

Presently before the Court are (1) defendants' motion, made pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking summary judgment, and (2) defendants' separate motion, made pursuant to Rule 11, seeking sanctions against plaintiffs and their counsel.  For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part, and defendants' motion for sanctions is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[1]

G&P is a car wash located at 4935 Nesconset Highway, Port Jefferson Station, New York.  Star is the owner and operator of G&P.  Enrique, Albarado, and Javier worked at G&P as car wash attendants.  Reyes worked as the manager of G&P between 2004 and his termination on June 22, 2010.

---

[1]     Local Rule of Civil Procedure 56.1 of the United States District Courts for Southern and Eastern Districts of New York ("Local Rule 56.1") requires parties moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence in the record supporting each such fact.  *See* Local Rule 56.1(a), (d).  By Order dated March 22, 2012, the Court issued an Order finding that plaintiffs had failed to comply with Local Rule 56.1(b), which requires a party opposing summary judgment to controvert the facts set forth in the movant's Local Rule 56.1 Statement and to cite evidence supporting the controverting statements of material fact.  The Court provided plaintiffs with an opportunity to file a responsive Local Rule 56.1 Statement.  Thereafter, plaintiffs submitted a document entitled "Plaintiffs' Rule 56.1 Statement."  This document repeats certain of the statements of fact set forth in defendants' Local Rule 56.1 Statement (which the Court deems to be admissions of their accuracy), does not address others, and offers additional statements of fact.  To the extent that plaintiffs' submission does not comply with Local Rule 56.1(b), the facts set forth in defendants' Local Rule 56.1 Statement will be deemed admitted so long as they are supported by admissible evidence.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

***Plaintiffs Javier, Enrique, and Albarado***

Javier was hired by G&P as a car wash attendant in May 2009 (Javier Dep. at 7), Enrique

was hired by G&P as a car wash attendant in July 2009 (Defs.' 56.1 ¶ 12; Compl. ¶ 11), and

Albarado[2] was hired by G&P as a car wash attendant in March or April 2009 (Albarado Dep. at

6).[3] It appears from the record that none of these plaintiffs remain employed by G&P. During

their respective employment periods, each plaintiff's weekly work hours were recorded on "sign-

in and sign-out" sheets, which were periodically submitted to G&P's payroll processing

company. That company would then "tally up the wages" and issue paychecks to the employees.

(*See* Reyes Dep. at 36.)

During his deposition, Enrique was shown "payroll sign-in sheets and earning

statements" for the period of his employment. (Enrique Dep. at 53-54.) Plaintiffs' counsel

stipulated on the record that "although [Enrique] doesn't have any independent recollection of

the exact hours he worked for these weeks," he had "no reason to doubt" the accuracy of those

records. (*Id.*) Plaintiffs' counsel made a similar stipulation during Albarado's deposition when

shown his payroll records for the term of his employment. (Albarado Dep. at 27 (stipulation by

counsel that Albarado had "signed each payroll document" and that "[h]e has no particular

---

[2]     Although plaintiff is listed as Geovany Antonio Albarado in the caption, defendants assert that plaintiffs' counsel notified them two weeks before the close of discovery that his name is really Antonio Ayala. (*See* Defs.' Mem. at 3 n. 2.) Because the caption has not been changed, however, the Court will continue to refer to plaintiff as Albarado.

[3]     Excerpts from Javier's deposition are attached to the Shteierman Declaration as Exhibit H and as plaintiffs' Exhibit B. Excerpts from Albarado's deposition are attached to the Declaration of Joshua S. Shteierman, dated January 16, 2012 ("Shteierman Declaration") as Exhibit G and as plaintiffs' Exhibit A. Excerpts from Enrique's deposition are attached to the Shteierman Declaration as Exhibit F and as plaintiffs' Exhibit D.

independent recollection of particular weeks and how many weeks he worked . . . and tips he received in those particular weeks, but he has no reason to doubt the accuracy of these records").) Javier testified during his deposition that he did not believe the work hours reflected in his payroll records were incorrect. (Javier Dep. at 39.) With respect to the payroll records reflecting the amount of tips he earned, however, Javier testified: "I don't know how they can get these numbers, if nobody kept track of any of these tips except us." (*Id.*) Javier further testified that he did not have any records of his own that would reflect the amount of tips he earned during his employment at G&P. (*Id.* at 40.)

### *Plaintiff Reyes*

Reyes began working as a manager of G&P in October 2004. Beginning in late 2005, Reyes became responsible for "payroll," which included the responsibility to record the start and end times for each employee's work day and to upload the daily payroll records to the appropriate payroll service company. (Defs.' 56.1 ¶ 4; Pls.' 56.1 ¶ 4; Reyes Dep.[4] at 22.)

On or about April 2, 2010, Star asked Reyes to clean rat droppings at the car wash premises. (Reyes Dep. at 11, 46, 49.) During his deposition, Reyes testified that he initially refused to comply with this request, asserting that he was "not trained" and did not have appropriate "protective gear." (*Id.* at 50.) Reyes told Star that his children were "highly allergic" to animal hair, and that he did not want to risk them having allergic reactions if he accidentally carried home a dropping. (*Id.*) Reyes ultimately relented, however, and spent 15 to 20 minutes cleaning rat droppings. (*Id.* at 54.) Reyes testified during his deposition that he never reported

---

[4] Excerpts from Reyes's deposition transcript are attached to the Shteierman Declaration as Exhibit C, as well as to plaintiffs' opposition papers as Exhibit C.

the incident to OSHA or any other state or federal agency.  (*Id.* at 55.)

According to Reyes, after this incident on April 2, 2010, all of his conversations with Star were "quite short and to the point."  (*Id.* at 55.)  For example, on June 1, 2010, Star asked Reyes to collect each employee's "employment [ ] files" and complete certain work on them.  (*Id.* at 56.)  Reyes told Star that this task could be completed by June 15th.  (*Id.*)  According to Reyes, Star responded "that if on June 16th it was not complete, I guess you would not have a job."  (*Id.*) Reyes further testified that Star spoke to him (and other staff members) in a "demean[ing]" manner, and would not let car wash employees stand inside to either warm up during cold weather or cool down during hot weather.  (*Id.* at 56-57.)

Reyes's employment was terminated on June 22, 2010.  In their summary judgment papers, defendants assert that Reyes "was terminated . . . for stealing cleaning chemicals from defendants," but they do not cite to any admissible evidence in support of that statement.  (*See* Defs.' 56.1 ¶ 10.)  The portions of Reyes's deposition transcript submitted to the Court by the parties do not include any testimony from Reyes as to the reason for his termination.  In an affidavit signed by Reyes and dated March 6, 2012 ("Reyes Affidavit"), Reyes asserts that due to the "hostile environment" created by defendants, his "work performance decreased which eventually led to [his] termination."  (Reyes Aff. ¶ 7.)

On May 17, 2011, Reyes entered a plea of guilty to disorderly conduct in New York State District Court, Suffolk County.  (Shteierman Decl., Ex. E.)  In connection with that guilty plea, Reyes allocuted under oath that between June 1 and June 14, 2010, he took car wash chemicals that belonged to Star without permission and used those chemicals for his personal use.  (*Id.* at 4-5.)

At some point, Reyes created a company called P&E Maintenance Services, Inc., which provided bus cleaning services.[5]  (Defs.' 56.1 ¶ 8; Pls.' 56.1 ¶ 8.)  P&E Maintenance Services, Inc. had approximately eight employees, including Javier, Enrique, and Albarado.  (Defs.' 56.1 ¶ 9; Pls.' 56.1 ¶ 9.)  During his deposition, Reyes testified that he did not use any chemicals taken from G&P while cleaning buses with his new company.  (Reyes Dep. at 66.)

***The Complaint***

Javier, Enrique, and Albarado allege that defendants violated the FLSA and NYLL by failing to pay them statutorily mandated minimum wages and overtime compensation.  They also allege that defendants violated the NYLL by failing to pay them the required spread of hours compensation.  Although the caption indicates that plaintiffs are suing defendants on behalf of themselves and others similarly situated, plaintiffs have not asserted a cause of action under 29 U.S.C. § 216(b) seeking a collective action, and do not seek to bring a class action pursuant to Rule 23.

Reyes alleges that his employment was terminated "in retaliation for his refusal to violate federal laws and OSHA regulations," in violation of the FLSA and NYLL.  (*See* Compl. ¶ 99.)

---

[5]     It is unclear whether Reyes created this company while he was still employed by G&P or after his termination.

***DISCUSSION***

**I.      *Summary Judgment Standard***

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. The court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). A district court considering a summary judgment motion must also be "mindful [ ] of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the

respective parties will bear at trial guide the district court in its determination of a summary judgment motion.  *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim.  *See id.* at 210-11.  Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'"  *Brady*, 863 F.2d at 211 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     *Javier, Enrique, and Albarado's Wage and Hour Claims*

### A.     *Overtime Pay Claims Under the FLSA and NYLL*

Under both the FLSA and NYLL, an employee must receive one and one-half times his regular rate of pay for any hours worked over forty in a given workweek.  *See* 29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 160; 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see also Noble v. 93 Univ. Place Corp.*, 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003) (noting that both statutes "entitle employees to time-and-a-half overtime for hours worked in excess of forty hours per week").

Defendants assert that their payroll records, submitted in connection with the present motion, demonstrate their compliance with these statutory overtime provisions.  (Defs.' Mem. at 10.)  Specifically, they assert that the payroll records show that:  (1) Enrique never worked any overtime; (2) Javier worked 11 hours of overtime during the week of January 10 – January 16, 2010, for which he was properly compensated; and (3) Albarado worked 7 hours of overtime

during the week of May 10 – May 16, 2009 and 11.5 hours of overtime during the week of May 17 – 23, 2009, for which he was properly compensated. (*See* Shteierman Decl., Ex. D.) As noted above, plaintiffs[6] did not dispute the accuracy of defendants' payroll records during their depositions and, in opposing summary judgment, plaintiffs do not challenge defendants' contention that they were properly compensated for these hours.

Instead, plaintiffs assert that they were required to perform uncompensated off-the-clock work, and that defendants failed to account for these hours when determining whether plaintiffs were entitled to overtime compensation.[7] (Pls.' Opp'n at 4-5.) Specifically, both Javier and Albarado testified during their depositions that they were required to perform certain tasks before the car wash opened (i.e., taking out the vacuums, towels, and other items that would be needed to wash cars) and to complete other tasks after the car wash closed (i.e., cleaning, mopping, taking out trash, and bringing in items used to clean cars.) (*See* Albarado Dep. at 7-13; Javier Dep. at 9, 33-36.) Albarado testified that he was required to work for approximately 40 minutes before the car wash opened and for 30 minutes after it closed (Albarado Dep. at 7– 8, 13), while Javier testified that he was required to work for between 30 and 40 minutes before the car wash opened and 10 to 20 minutes after it closed (Javier Dep. at 9, 35). Albarado, Javier, and Enrique

---

[6] For purposes of Section II of this Memorandum & Order, the term "plaintiffs" shall refer only to Enrique, Javier, and Albarado, i.e., the only plaintiffs asserting wage and hour claims.

[7] At least one court within this Circuit has concluded that even when a plaintiff does not specifically allege in his complaint that he was denied wages for off-the-clock work, the defendants are sufficiently put on notice of such claims when the complaint alleges that the defendants failed to pay them full overtime wages. *See Guan Ming Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 172 (S.D.N.Y. June 1, 2011). Defendants have not asserted that they lacked sufficient notice of plaintiffs' off-the-clock claim even though it was not expressly pled in the Complaint.

also testified that they were not given any meal breaks.[8] (Albarado Dep. at 11; Javier Dep. at 36; Enrique Dep. at 22.) Reyes testified that "[e]mployee breaks are not recognized in any fashion," employees "are not given time to eat," and that they must "eat while they're standing." (Reyes Dep. at 57.) Star testified during his deposition as follows: "A lunch break is an unpaid half an hour. The employees have the option of taking that lunch break. They are told to notify a manager. Nobody has ever notified a manager that they want an unpaid lunch break." (Star Dep.[9] at 38.) Star testified that he had seen employees eating lunch during "down time" in working hours, but that employees never asked to have a "designated" unpaid half-hour lunch break. (*Id.* at 38-39.)

1.     <u>Pre- and Post-Shift Work</u>

Defendants argue that "the time [plaintiffs] allegedly spent at the car wash prior to its opening and after its closing is not compensable time" that may be counted in determining whether an employee worked more than forty hours in a workweek. (Defs.' Mem. at 3.) Pursuant to the Portal-to-Portal Act, 29 U.S.C. § 251, *et seq.*, which amended the FLSA in 1947, "activities which are preliminary to or postliminary" to the "principal activities" that an employee is employed to perform, which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he

---

[8]     In their opposition papers, plaintiffs assert that "at times [they] waited two (2) hours before they were told if they would be working for the rest of that specific day." (Pls.' Opp'n at 4.) The cited deposition testimony does not, however, support this assertion. Albarado testified that he would arrive at work approximately 40 minutes before the car wash opened, and then would go home if he was told that he was not needed when the car wash opened at 8:00 a.m. (Albarado Dep. at 8.)

[9]     Excerpts from the Star Deposition are attached to plaintiffs' opposition papers as Exhibit F.

ceases, such principal activity or activities," are not compensable. 29 U.S.C. § 254(a)(2). It is well-settled, however, "that duties should be considered principal activities, rather than non-compensable preliminary or postliminary tasks, if they are 'an integral and indispensable part of the principal activities for which covered workmen are employed.'" *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649-50 (2d Cir. 1995) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). According to the Second Circuit:

> The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

*Reich*, 45 F.3d at 650.

Here, plaintiffs have provided evidence that they were required to report to the car wash before it opened and to stay after it closed. (*See* Albarado Dep. at 8 (testifying that a supervisor told him to report to work at 7:20 a.m., forty minutes before the car wash opened at 8:00 a.m.); Javier Dep. at 9-10 (testifying that a supervisor told him to report to work "early" to increase his chances of getting "picked" to work that day, and that a supervisor directed him to set up car washing tools while he waited); *id.* at 34-35 (testifying that although the car wash closed at 6:00 p.m., "we still ha[d] to clean the place," which took an extra ten or twenty minutes after closing)). Evidence that plaintiffs were required to work outside of the car wash's operating hours, if proven, could lead a reasonable jury to conclude that plaintiffs were performing compensable work during that time period. *See Reich*, 45 F.3d at 651 ("[A]n activity constitutes 'work' (compensable under the FLSA) if it involves 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily

for the benefit of the employer and his business.'") (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).

Moreover, if the "proper performance of [plaintiffs'] job required the preparatory work [they described during their depositions] to be completed when [the car wash opened], this time should have been counted, regardless of whether anybody specifically instructed them to arrive early." *See Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 718 (2d Cir. 2001); *see also* 29 C.F.R. § 790.8(b)(2) (noting that "preparatory activities" that "are an integral part of the principal activity" have always been "regarded as work and as compensable" under the FLSA). Here, plaintiffs testified that they arrived early at the car wash to take out and set up the equipment they would need to wash cars. If these activities were "'an integral and indispensable part of the principal activity of the employment,'" *id.* at 717 (quoting *Steiner*, 350 U.S. at 256), plaintiffs would have to be compensated for their time spent performing these activities. *See Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956) (finding that butchers should be compensated for the time spent before and after their shifts sharpening their knives because having "razor sharp" knives was "an integral part of and indispensable to the various butchering activities for which they were principally employed"). Defendants have not addressed whether the work that plaintiffs completed before and after their shifts was "an integral part of and indispensable to" the activities for which they were principally employed, or whether it was necessary for plaintiffs to complete these tasks outside of the car wash's hours of operation. *See Kosakow*, 274 F.3d at 718 (reversing grant of summary judgment when questions of material fact existed as to whether x-ray technicians' pre-shift activities, which included turning on, warming up, and testing the x-ray machine, which were undisputedly "necessary for the proper

performance of her job," needed to be completed before the office opened).

Defendants insist that plaintiffs' current claims are foreclosed by their admissions and stipulations during their respective depositions that their payroll records were accurate. (*See* Reply Mem. at 3.) This situation is similar to that presented to the Second Circuit in *Kosakow*, where an x-ray technician claimed that her compensable work hours should have included the fifteen minutes she spent before each shift preparing her x-ray equipment so that it would be ready when the office opened for patients. *See* 274 F.3d at 716. The lower court, in granting summary judgment for the defendants, had "relied exclusively on the timesheets filled out by Kosakow, and held that she offered no concrete evidence to indicate that these timesheets were inaccurate." *Id.* The Circuit concluded, however, that:

> Kosakow is not [ ] necessarily claiming that the timesheets were inaccurate. To be precise, she does not dispute that her shift began at 8:00 a.m., nor does she argue that the timesheets were inaccurate insofar as they reflect the fact that her pay was based upon her shift beginning at 8:00 a.m. To the contrary, her claim is that in order to fulfill her job responsibilities, it was necessary that she arrive at 7:45 a.m. despite the fact that her shift did not begin until 8:00 a.m. She argues that those fifteen minutes each morning should count towards her hours worked, despite the fact that they were not included in her paychecks or on her timesheets.

*Id.* The Court finds this reasoning applies equally to this case and, as such, does not find that plaintiffs' stipulations during their depositions preclude their claims regarding off-the-clock work.

Finally, defendants argue that any time plaintiffs worked before or after the operating hours of the car wash "should be considered *de minimis* and therefore not compensable." (Reply Mem. at 4.) "[I]n determining whether time should be excluded from compensation as de

minimis," the Court must examine the following factors: "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Kosakow*, 274 F.3d at 719 (quoting *Reich*, 45 F.3d at 652). Here, plaintiffs have proffered evidence that they were required to report to work between thirty and forty minutes prior to the car wash's opening and to stay at work for approximately ten to twenty minutes after it closed, and that they were required to do so for each shift they worked. Applying the three factors articulated above, this does not constitute de minimis activity. *See id.* (finding that the plaintiff's "regular arrival for fifteen minutes of preparatory work would not constitute de minimis activity" because "[i]t would not be difficult to calculate, in the aggregate it constituted a significant amount of time, and it occurred regularly").

## 2. Meal Breaks

With respect to plaintiffs' claims that they were not provided with a lunch break, Star testified during his deposition that employees were given the option of taking a half-hour unpaid lunch break, but that no employee chose to avail himself of that option. (Star Dep. at 38-39.) Plaintiffs have not proffered any evidence that they requested an unpaid half-hour lunch break and that such a request was denied. Further, plaintiffs have not alleged that defendants utilized any type of automatic meal deduction policy pursuant to which defendants deducted a half-hour from their wages but nonetheless required them to work throughout that time. *See Wolman v. Catholic Health Sys. of Long Island*, 853 F. Supp. 2d 290, 301 (E.D.N.Y. 2012) ("[I]t is the *failure to compensate* an employee who worked with the employer's knowledge through an unpaid meal break – whether the employee reported the additional time or not – that potentially violates the FLSA."), *aff'd in relevant part, rev'd in part*, __ F.3d __, 2013 WL 765117 (2d Cir.

Mar. 1, 2013). Thus, plaintiffs have failed to demonstrate how defendants' alleged failure to provide them with a half-hour unpaid lunch break supports their claims that they were improperly denied overtime compensation.

### 3. Conclusion

Defendants' motion for summary judgment as to plaintiffs' overtime claims under the FLSA and NYLL is denied. Plaintiffs have proffered sufficient evidence to raise a genuine issue of material fact as to whether the work they performed before the car wash opened and after the car wash closed was compensable, and therefore should have counted towards their weekly hours for purposes of computing overtime.

### B. Minimum Wage Claims Under the FLSA and NYLL

Both the FLSA and NYLL require employers to pay their employees a specific minimum hourly wage. As of June 24, 2009, the minimum wage under both the FLSA and NYLL is $7.25 per hour. 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). Javier and Albarado began work shortly before this date and, as such, would have been entitled to a minimum wage in the amount of $7.15 per hour for that time period. *See* N.Y. Lab. Law § 652(1).[10] "Provided certain conditions are satisfied, however, an employer may 'pay tipped employees an hourly rate less than the [statutory] minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage.'" *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *17 (S.D.N.Y. Feb. 1, 2007) (quoting *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002)).

---

[10] The minimum wage under the FLSA was only $6.55 per hour for work performed prior to June 24, 2009. *See* 29 U.S.C. § 206(a)(1). Defendants, however, had to comply with the NYLL's higher minimum wage requirement of $7.15 per hour during that time period.

1.    **Plaintiffs' Challenge to the Amount of the Tip Allowance Used by Defendants to Calculate Their Pay**

The NYLL provides that "[t]ips or gratuities[ ] may be considered a part of the minimum wage," 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(b), except that the amount of the tip allowance shall not exceed "$1.10 per hour for an employee whose weekly average rate of tips received is between $1.10 and $1.75 per hour, and $1.75 per hour for an employee whose weekly average of tips received is $1.75 per hour or more." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(b)(2)(i)(d).[11]

Plaintiffs assert that "[i]n our case, Defendants paid Plaintiffs at an hourly rate of $5.50, and used a tip credit of $1.75 to meet the minimum wage requirement . . . of $7.25." (Pls.' Opp'n at 7.) Plaintiffs assert, however, that defendants failed to make any record of the amount of tips that plaintiffs actually received and "simply took advantage of the tip credit system without complying with its requirements." (*Id.* at 10.) As support for this assertion, plaintiffs rely on the following deposition testimony of Star:

> Q:    . . . Presently is there an employee who is in charge of telling you how much money in tips [the employees] made for that day?
>
> A:    The manager tells me.
>
> Q:    Who tells the manager?

___

[11]    Under the FLSA, an employer paying an employee based upon a tip credit structure must pay the employee an amount equal to "the cash wage required to paid such an employee on August 20, 1996," i.e., $4.25, plus "an additional amount on account of the tips received by such employee which amount is equal to the difference between [$4.25] and" the effective current minimum wage set by the FLSA. 29 U.S.C. § 203(m). As noted in the text above, however, the NYLL limits the amount of tip allowances more stringently than the FLSA. Thus, defendants were required to adhere to the NYLL's requirements.

A:      The group of employees.

. . .

Q:      Have you ever been told how much employees made in tips for a day?

A:      What I am told is they make a $1.75 . . . They don't tell me they make more and they don't tell me they make any less.

Q:      Has it ever happened that at the end of the day somebody comes up to you and say that the employees made X amount of dollars in tips today, has that ever happened?

A:      No, only what is reported to me at that $1.75 an hour. That's what is told to me.

(Star Dep. at 28-29.) Thus, according to plaintiff "no one kept any records [of the amount of tips each employee earned], but instead, they took the number of hours each employee worked and simply multiplied by the $1.75 to make up for tip credit . . . ." (Pls.' Opp'n at 8.)

Plaintiffs do not articulate exactly how they were damaged by this alleged practice, although the Court presumes the argument would be that if plaintiffs actually earned less than a weekly average of $1.75 per hour in tips, but defendants applied a tip allowance in the amount of $1.75 when calculating their pay, plaintiffs received less salary overall than they would have if the proper, lower tip allowance was applied.[12] Plaintiffs have not, however, pointed to any record evidence suggesting that they actually earned less than a weekly hourly average of $1.75

---

[12]     If, for example, an employee only earned a weekly average of $1.10 per hour in tips, the NYLL limits the tip allowance amount to $1.10 per hour. 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(b)(2)(i)(d). Thus, that employee would be entitled to an hourly rate of $6.15, and a tip credit of $1.10 to reach the minimum wage requirement of $7.25. If a tip allowance of $1.75 is improperly applied to that same employee, however, he gets paid only $5.50 per hour (i.e., the $7.25 minimum wage minus a tip credit of $1.75 per hour), instead of $6.15 per hour to which he was entitled (i.e., $7.25 minus a tip credit of $1.10 per hour).

in tips.  In fact, defendants have highlighted deposition testimony from Albarado and Javier that indicates these plaintiffs actually earned more than a weekly average of $1.75 per hour in tips. (*See* Albarado Dep. at 9 (testifying that each week, on average, he earned between $40 and $60 in tips per day); Javier Dep. at 16 (testifying he earned "[a]bout a hundred dollars" per week in tips).)

The NYLL sets forth three requirements that an employer must satisfy in order to permissibly consider tips as part of an employee's minimum wage:

> (i) the particular occupation in which the employee is engaged is one in which tips have customarily and usually constituted a part of the employee's remuneration;
>
> (ii) substantial evidence is provided that the employee received in tips at least the amount of the allowance claimed.  An example of substantial evidence is a statement signed by the employee that he actually received in tips the amount of the allowance claimed; and
>
> (iii) the allowance claimed by the employer is recorded on a weekly basis as a separate item in the wage record.

12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(b).  Here, there is no dispute that plaintiffs' occupation "is one in which tips have customarily and usually constituted a part of [their] remuneration."  *See id.*  With respect to the second requirement, defendants have submitted weekly "Payroll Signage Sheets" signed by plaintiffs (and all other employees who worked during that particular week), which clearly indicate the hours each employee worked and the amount of tips they earned that week.  (*See* Shteierman Decl., Ex. E.)  Plaintiffs have not offered any evidence indicating that the tip amounts recorded on these Payroll Signage Sheets were

inaccurate.[13]  Finally, Star testified that the tip allowance was recorded on "the weekly schedule" (Star Dep. at 27), and plaintiffs have not disputed this.  Thus, plaintiffs have failed to raise a genuine issue of fact as to whether the amount of the tip allowance used by defendants was improper under the FLSA or NYLL.

**2.**      **Plaintiffs' Claims That Defendants Failed to Provide Adequate Notice That Tips Would be Considered Part of Their Hourly Wage for Minimum Wage Purposes**

Plaintiffs assert that defendants did not provide them with "proper written notice" that a tip credit was being used to calculate their hourly wage.  (Pls.' Opp'n at 6.)  Specifically, plaintiffs assert that defendants violated New York state law by failing to provide plaintiffs with "written notice" of "the amount of tip credit" in both English and "any other language spoken by [an] employee," and to keep "[a]n acknowledgment of receipt signed by the employee" on file for six years.  *See* 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 (cited by Pls.' Opp'n at 6).

As defendants point out, however, the statutory provision cited by plaintiffs applies only to employees "permitted to work in the hospitality industry," which includes "any restaurant or hotel."  *See* 12 N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.1, 146-3.2.  A car wash does not fall within the statutory definition of "restaurant" or "hotel."  *See* 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1.  The relevant statutory provision applicable to plaintiffs, i.e., 12 N.Y.

---

[13]     Plaintiffs point to the deposition testimony of non-party Ramon Alfredo Mendoza (attached as Plaintiffs' Exhibit E), who worked as a manager at G&P between 2009 and 2011. (Mendoza Dep. at 7.)  During his deposition, Mendoza testified that he never reviewed the information on the Payroll Signage Sheet and signed it simply to receive his paycheck.  (*Id.* at 38-39.)  Mendoza, however, is not a plaintiff in this action.  As noted above, plaintiffs have not proffered any evidence to demonstrate that the tip amounts recorded on the weekly Payroll Signage Sheets, which they signed, were inaccurate.  Indeed, during their depositions, plaintiffs either testified or stipulated through counsel that the information set forth in their payroll records was accurate.

Comp. Codes R. & Regs. tit. 12, §142-2.5, does not contain any particular notice provisions with respect to the employer's use of tip credits, and certainly does not require written notice in more than one language or a signed acknowledgment of receipt.

The FLSA states that an employer is eligible to use a tip credit if it informs the employee of the relevant statutory provisions. 29 U.S.C. § 203(m). "Congress 'expressly required notice as a condition of the tip credit,' and the Courts of Appeals have interpreted the notice provision to require 'at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (quoting *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322-23 (1st Cir. 1992)). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." *Chan*, 2007 WL 313483, at *18 (quoting *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) (internal quotation marks omitted)).

Although defendants do not specifically address the contours of the FLSA's notice requirement, they contend that they provided plaintiffs with adequate notice of their intention to use a tip credit by posting signs throughout the workplace that "provided an explanation of tip appropriation and contained all other relevant federal and state labor laws." (Reply Mem. at 7.) Moreover, defendants assert that these signs were in both English and Spanish. (*Id.*) Albarado, Javier, and Enrique each contend, however, that "[e]ven though there [were] signs regarding how my wage was calculated, I did not understand them" because "[t]he signs were all in English." (*See* Aff'n of Roman Avshalumov, Esq., dated Apr. 20, 2012 ("Avshalumov Aff'n") Exs. A-C.)

Defendants have submitted color photographs of the posters at issue, but these

photographs were taken at some distance from the posters themselves. (*See* Shteierman Decl., Ex. I.) Therefore, in the photographs, the text on the posters is so small that it is impossible to discern their content, although certain phrases, such as "Federal Labor Laws," "Employee Rights," "Equal Employment Opportunity is the Law," and "Job Safety and Health" are legible. (*Id.*) Aside from counsel's statement in their legal brief that the posters contained relevant information about the tip credit, defendants have submitted no evidence from anyone with firsthand knowledge attesting that this is so. This is a critical omission, because "[a] generic government poster could inform employees that minimum wage obligations exist, but could [ ] possibly [fail to] inform employees that their employer intend to take the tip credit with respect to their salary." *Copantitla*, 788 F. Supp. 2d at 289. Moreover, defendants have not submitted any evidence from anyone with personal knowledge as to where and when these posters were displayed and, thus, the Court cannot determine whether these posters were prominent and visible, and whether they were, in fact, displayed during plaintiffs' tenures of employment. *See Chan*, 2007 WL 313483, at *19 (finding notice of tip credit insufficient under FLSA because it was "posted in a relatively inconspicuous area"). Finally, it is impossible to tell, from reviewing the color photographs of the posters alone, whether the information contained therein is written in both English and Spanish. *See id.* (finding notice of tip credit did not comply with FLSA when it was in English "a language that few of the plaintiffs can read"). There is also conflicting record evidence as to whether the posters contained information in both English and Spanish. (*Compare* Avshalumov Aff'n, Exs. A-C (stating that the posters were only in English) *with* Pls.' Ex. E (Dep. of Ramon Alfredo Mendoza) at 30-31 (testifying that the posters were in both English and Spanish).)

Thus, plaintiffs have raised a genuine issue of material fact as to whether defendants

complied with the notice requirements of the FLSA with regard to defendants' use of the tip credit structure in calculating their wages. Defendants' motion for summary judgment as to this claim is denied.

### C.   *Spread of Hours Claims Under the NYLL*

Under New York law, an employee is entitled to receive an additional "one hour's pay at the basic minimum hourly wage rate" for any day in which "the spread of hour exceeds 10 hours." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Defendants assert that they are entitled to summary judgment as to plaintiffs' spread of hours claim (*see* Compl. ¶¶ 95-97) because "a review of defendant[s'] payroll records reveal that the maximum hours any employee, including the plaintiffs, worked in a given day was 9.5 hours." (Defs.' Mem. at 12.) Plaintiffs argue that "if we add the off-the-clock work done by Plaintiffs" before and after the car wash's operating hours, "Plaintiffs worked over ten (10) hours per day" and are, therefore, "entitled to spread of hours pay." (Pls.' Opp'n at 5.)

As set forth above, plaintiffs have proffered sufficient evidence to raise a question of fact as to whether the work that they performed before the car wash opened and after the car wash closed was compensable work for purposes of calculating overtime. For the same reasons, plaintiffs have also raised a question of fact as to whether such off-the-clock work should have been counted for purposes of determining whether plaintiffs were entitled to the spread of hours pay under New York state law. Accordingly, defendants' motion for summary judgment as to plaintiffs' spread of hours claim is denied.

### III. Reyes's Retaliatory Discharge Claim

#### A. Under the FLSA

The FLSA provides that it shall be unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are subject to the [*McDonnell Douglas*] three-step burden-shifting framework." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of FLSA retaliation, a plaintiff must show: "(1) participation in protected activity known to defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Id.*

Here, plaintiff has proffered no evidence that he filed any complaints regarding FLSA violations prior to his termination. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011) ("To fall within the scope of the [FLSA's] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it . . . *as an assertion of rights protected by the statute* and a call for their protection.") (emphasis added). Moreover, the present lawsuit was filed after Reyes's employment at G&P had ended and could not have, therefore, served as the basis for his termination.

Accordingly, defendants' motion for summary judgment as to Reyes's FLSA retaliatory discharge claim is granted.

### B.  Under the NYLL

Section 740(2) of the NYLL prohibits an employer from taking any "retaliatory personnel action against an employee" if that employee:

> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety . . . or (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

N.Y. Lab. Law § 740(2)(a), (c).  "The provisions of Section 740 have been strictly construed." *Noble*, 303 F. Supp. 2d at 373.  The statute's protections are "'triggered only by a violation of a law, rule or regulation that creates and presents a substantial and specific danger to the public health and safety.'"  *Villarin v. Rabbi Haskel Lookstein Sch.*, 96 A.D.3d 1, 5 (1st Dep't 2012) (quoting *Remba v. Fed'n Emp't & Guidance Serv.*, 76 N.Y.2d 801, 802 (1990)).

Here, plaintiffs have proffered no evidence that would demonstrate that Star's direction to Reyes to clean rat droppings in the workplace violated any law or regulation.  In fact, Reyes has never identified any specific provision of OSHA or any other law, rule, or regulation that this conduct purportedly violated.  Instead, he relies solely on his "own uncorroborated and unsubstantiated opinion" that Star's request that he clean the rat droppings created an unsafe condition.  *See Khan v. State Univ. of N.Y. Health Sci. Ctr.*, 288 A.D.2d 350, 351 (2d Dep't 2001) (affirming summary judgment when "plaintiff did not allege an *actual* violation of any specific law, rule, or regulation," and his "opinion that the laboratories were unsafe amounts to no more than 'a reasonable belief of a possible violation,' which, without proof, will not support a cause of action to recover damages under Labor Law § 740") (quoting *Bordell v. Gen. Elec.*

*Co.*, 88 N.Y.2d 869, 871 (1996)); *see also Dubois v. Brookdale Univ. Hosp.*, 6 Misc.3d 1023(A), at *12 (N.Y. Sup. 2004) (same). As plaintiffs have failed to proffer any evidence going to this essential element of a retaliatory discharge claim under Section 740 of the Labor Law, defendants' motion for summary judgment seeking dismissal of this claim is granted. *See Berde v. N. Shore-Long Island Jewish Health Sys., Inc.*, 50 A.D.3d 834, 835 (2d Dep't 2008) (affirming summary judgment dismissing Section 740 claim when "plaintiff failed to adduce sufficient evidence that the defendant's activities constituted a violation of law or regulation").

Accordingly, defendants' motion for summary judgment as to Reyes's retaliatory discharge claim pursuant to Section 740 of the NYLL is granted.[14]

## IV.    *Defendants' Motion for Sanctions*

Separately, defendants have moved for sanctions pursuant to Rule 11, asserting that the Complaint "does not state a single meritorious cause of action." (Defs.' Mot. for Sanctions at 5.) Defendants further assert that Reyes, "angered by being terminated for stealing chemical supplies from Defendants, solicited the three other named plaintiffs, who not coincidentally worked for Reyes in his side business cleaning busses, to join the instant lawsuit in an effort to intimidate and harass Defendants." (Reply Mem. at 9.)

Pursuant to Rule 11(b), by signing a "pleading, written motion, [or] other paper" that is presented to the Court, an attorney certifies that, "to the best of [his] knowledge, information, and

_____

[14]    In their motion papers, defendants argue that Reyes has failed to establish a hostile work environment claim. (*See* Defs.' Mem. at 7-9.) It does not appear from the face of the Complaint, however, that Reyes has actually pled a hostile work environment claim. Nor does he raise the issue in his opposition papers. Accordingly, to the extent the Complaint could be read as including a hostile work environment claim, the Court deems it abandoned based upon Reyes's failure to oppose defendants' motion for summary judgment as to that claim. *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. July 21, 2006).

belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

Rule 11 places an "affirmative duty" upon attorneys to make "reasonable inquiry" into the facts and the law. *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (internal quotation marks omitted). "'The standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) (internal citation omitted) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)).

"Although the imposition of sanctions is within the province of the district court, any such decision should be made with restraint and discretion." *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (internal quotation marks and alteration omitted). "When divining the point at which an argument turns from merely losing, to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading." *Dorchester Fin. Secs. v. Banco BRJ, S.A.*, 2010 WL 2483983, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and alterations omitted); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996) (noting that "Rule 11 sanctions must be imposed with

caution").

Here, as set forth in detail above, the Court has denied defendants' motion for summary judgment in part, concluding that defendants are not entitled to dismissal of certain of plaintiffs' claims made pursuant to the FLSA and NYLL. Clearly, therefore, plaintiffs' claims are not so frivolous in their entirety as to warrant the imposition of sanctions. Moreover, aside from the conjecture of counsel, defendants have proffered no support for their accusation that Reyes solicited the other three named plaintiffs and commenced this action solely for the purpose of harassing defendants. Accordingly, defendants' motion for sanctions is denied.

*CONCLUSION*

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part. Peter Reyes's claims against defendants are dismissed in their entirety. Defendants' motion is denied as to the following claims of Enrique Perez, Geovany Antonio Albarado, and Javier Cruz Perez: (1) FLSA and NYLL overtime claims based on their alleged performance of off-the-clock work; (2) Claims that defendants failed to provide adequate notice under the FLSA regarding the use of the tip credit compensation structure; and (3) NYLL spread of hours claims. Defendants' motion for sanctions is denied. By separate Order, the Court will schedule a Final Pre-Trial Conference.

**SO ORDERED.**

Dated: Central Islip, New York
      March 13, 2013                          _/s/_____
                                                 Denis R. Hurley
                                                 Unites States District Judge